We'll hear the next case for argument, which is AMF Pensionsforsakring v. Precision Castparts Corp. Morning, may it please the Court. Kevin Russell on behalf of the Plaintiff Appellants. I will endeavor to reserve three minutes for rebuttal. The difference between this case and Wochos v. Tesla is context. In Tesla, the defendants' unadorned statements that they were on track to meet a production goal told the markets nothing material about what was actually happening on the ground for two reasons. First, the defendants had provided the market no measuring stick that would allow them to And second, and relatedly, they had not ruled out the possibility that the company could make up for slow initial progress with a big push at the end. And so, as a consequence, it was possible for nearly any set of circumstances to be represented as being on track. This case is very different. Here, the defendants did not simply tell investors that they were on track to meet their earnings target and ask the market to trust them and take their The target remained achievable because they had recently achieved organic earnings growth that was on a line that was concrete and went from where earnings stood when that target was announced to the target range, an amount in that there was a straight line and that, as a matter of simple mathematics, Defendant Donegan twice confirmed that the slope of that line was about 3.5%. In that context, this was a line of the sort that this court, this was a statement of the sort this court held in Tesla. Counsel, I'm sorry if you can't hear me, but how do you address all of Donegan's statements where he, one, doesn't, refuses to commit or confirm a specific number and also says that the line is, there are a lot of statements both by people asking the question and by that he's hovering around the line, that he might be below the line, there are going to be periods where they're below the line, above the line, what they're talking about is a long-term progression, and so how is that a specific concrete representation that PCC would actually be meeting a specific target as contemplated by the court in Tesla? So I think it is true that there is some fuzziness in where the line is, and there is some wiggle room when he says things like we're hovering around the line. But I think all that means is that a reasonable jury might think that the line, the statements are the equivalent of saying, look, we've experienced in the past quarter somewhere between 2% and 5% growth, not that he was saying we achieved precisely 3.5% growth. And even if we give them that, there are three things that remain true about that kind of statement. One, it is still unambiguously a statement about past growth, not the future. Second, it is a statement about the past that is far more concrete than what this court gave as an example in Tesla would suffice. So in that case, the court gave the example of a company saying our present performance is comparable to what it had been in the past, and the court said that that's concrete enough. And it drew the idea of a concrete representation from this court's prior decision in quality systems where the court said a number of very imprecise statements. Our sales remain strong. Our pipeline is deep. Nothing fundamental has changed. In the quality systems, I think that issue with specific statements about the nature of the sales pipeline outside conditions, they said represented how much of that sales pipeline was greenfield. That was not just an internal performance target, but a representation about the nature of the world, a specific factual representation. I see that possibly here with some of the destocking statements that the court eventually found were not forward-looking, but insufficient to prove loss causation. But here with the on-the-line statements, that seems more like the performance statements that were at issue in Tesla. So even with assuming that those on-the-line statements were not forward-looking, as you're arguing, given the range and the fuzziness and the lack of commitment, how do you prove then knowing falsity? So okay, if I understand your question, you're asking a question not about the safe harbor, but whether these statements, given their fuzziness, can be materially false. And I would say a couple of things about that. So again, even if a jury would have to say this is a claim that we're somewhere between 2% and 5%, that would be materially—a reasonable jury could find that materially false, because at the time that they were making these statements, they weren't making 2% organic growth. They were making, for the vast majority of the class period, zero or negative growth. So by the time, for example, when Defendant Donegan made the hovering statement—this is Statement 15 in the district court's list of statements—the company was 15 cents below the line, more than 5%. And Defendant's own investor relations—head of investor relations, who should know what matters to the market—had made an internal presentation to the company in which he said, being off on EPS by even 0.28% from what the market expected would be considered a miss by the street. And this missed that target by more than 28 times that discrepancy. And of course, this court has regularly said that whether a misstatement is material is a question of fact that requires a context-specific analysis of this particular market and these particular statements that almost never can be decided on summary judgment. What can you point to in the record that shows, as a matter of fact, that the growth was outside the range that you're talking about? Can you point me to the record? Sure. So our expert put together a chart, which is at page 15 of our opening brief, in which he made calculations about what the organic rate—the organic growth actually was compared to what it would have to be to be on that 3.5% line. Now that 3.5% line, that chart looks an awful lot like a chart that the defendants themselves were using to track their internal progress. And they were tracking along this same line. The difference was that their chart didn't separate organic growth from total growth. But even that chart, which is also in our brief, showed that they were significantly below the line. Let me ask you about Tesla again. One aspect of Tesla that bothered me a little was that, in some ways, it's worse than this case, in the sense that in Tesla, in order to make the projected number of cars, they had to have a capacity to do that with an automated production line. And they didn't have that. And so they were not only not making their projection, but they couldn't make their projection because of the current situation of their factory. And so in that sense, it's not merely a projection of future, but it's a misstatement of present situation. In this case, you have a line that's projecting forward that you say they're meeting, but they're not. But couldn't they always make up for lost time, in the sense that they couldn't in Tesla? No, Donegan specifically rejected that at multiple phases. So if you look, for example, statement three, which is a statement that he made in announcing the target. And an analyst asks, you know, can you – any type of help on kind of the in-between points between here and there? What does the growth look like? Is it skewed one year relative to another? And he says, you know, we're linear thinking. I don't think we're going to set ourselves up to have some giant run towards the end. My mentality would not allow me to say we're going to be marginal, marginal, and then make a huge run to the end. And then he gets asked another version of that question in statement four. Well, maybe is it truly linear, or is it front-end loaded with back-end conservatism? And again says – and the same thing, the same question the analyst says, I calculate it to be about three and a half percent. And he says – he doesn't say, no, it's an S-line, it's an L-line curve. He says, I think that directionally your math is very appropriate. You plot a straight line. You may – you see ups and downs, but directionally they average out kind of to that particular number. And in statement 11 – And he's talking about an average over time. That's correct. So he could – even if he can't make up for it in a huge leap, he does indicate that there could be low periods where they're below the line, made up for by periods where they are above the line. In a very modest way, right? So again, in statement 11, he denies that it'll be an L-shaped curve, right? And so, again, it could be a little bit of wandering up and down. But that's very different from what actually happened, and it is not – a jury could reasonably say that he wasn't telling the truth, because the difference between where they were and where anybody could reasonably say they were hovering around the line is too great. I also have a question about what counts towards this line. And I understand in the briefing, in your representation, is that he was committing to a 3.5 percent growth made up solely of organic growth. I think that's the terminology you're using. When I read the context in the statements that he's – in the questions back and forth, it seems like there are multiple times where Mr. Donegan represents that if he doesn't make his line through organic growth, he'll try to meet it in other ways, operationally, other means. So I don't quite understand where the – where are you getting a representation that the 3.5 percent has to be made up solely out of organic growth? So I don't think that the defendants actually dispute that he promised that the growth would be made by organic growth. When he's referring to organic growth in these statements, he's using the same term but differently. He's referring to organic revenue growth. The target is in terms of earnings per share, which is a result of both revenue and costs and a bunch of other things. And what he's saying in those statements about pulling levers is if our natural revenue expansion, excluding acquisitions and such, isn't very high, I can still make that earnings per share target by, for example, increasing efficiency, driving down our costs. That's what he's talking about in those statements. And as a consequence, I think a reasonable jury could find that investors took these statements to mean that they were roughly somewhere around that line. And that is not a backward-looking statement. The defendants put a lot of weight on the fact that this court used the word concrete in Tesla, and so did the district court. But we know, again, as I said before, that the examples that this court gave in Tesla about what constitute concrete statements about the fact do not require a heightened level of particularity. And there's no indication of where the court could have come up with this standard of heightened particularity, that it goes well beyond what materiality already requires. It's certainly not anything inherent in the idea of what it means to make a forward-looking statement. Forward-looking statements can be very vague. When my kids come home from school, they say, how was your day? And they say, eh, it was okay. Right? That's a completely vague statement, but it's undoubtedly a statement about the past and not the future. Tesla simply made a common-sense observation that when a statement tells you nothing material about the past because the defendants have not provided you any metric for turning an on-track, unadorned on-track statement into facts on the ground, then all you're left with is a statement that you remain confident in the ability to reach the goal in the future, which is just a statement of an opinion. If I could reserve the remainder of my time. You may. Thank you. Good morning, Your Honors. Judson Lobdell on behalf of Defendants Precision Kaspartz, Mark Donegan, and Sean Hagel. May it please the Court, we would request that the Court affirm summary judgment here The decision in Tesla is on point. These statements were simply affirming a target that had been made, that had been introduced in prior periods. Mr. Donegan was saying that the company remained on track. He didn't use the same linear metaphor that Elon Musk used, but he used similar metaphors, drumbeat, slope, line. The difference in choice of metaphor shouldn't dictate the result here. Mr. Donegan did not provide... Didn't he also disclaim that there would be some sort of pop or run at the end, what's been described perhaps, if I understand it correctly, as an L-shaped curve? He said that wasn't going to happen. In Tesla, there was no such statement, and that seemed to be part of the reasoning of the Court in Tesla. He specifically warned that investors should not expect there to be a giant leap or pop at the end. But he did not say that quarterly organic earnings per share would grow at a precise rate. There was no measuring stick. In fact, he said precisely the opposite. Not only did he warn that there wouldn't be a giant pop at the end, but he also warned that there would not be strict linear growth, that there would be a give and take, there would be ups and downs. And in fact, that's why he explained... He said both things, ups and up and down, and on the line, and the drumbeat, and no pop at the end. He said all those things. He said all those things, and he specifically warned that investors should not expect that growth would track a particular straight line. And that's clear on the record. He said directionally, to get to the target, there would have to be growth in the neighborhood of three and a half percent. But he did not say that that would be uniform for each quarter. The test in Tesla is, is there some statement, concrete statement, about a specific historical fact that is made in connection with affirming a target? And absent that, affirming a target is protected by the safe harbor. There is no concrete statement of historical fact in this case that accompanies those statements. Mr. Donegan says hovering. He says, no, it's not where we wanted to get, but we're hovering near the line. He says we're on the slope in the first quarter of 2014, at a time when they're two cents off the slope. So there, as the district court concluded, these are not concrete and specific statements of historical fact. Whether the company is hovering, what exactly hovering means, is not a concrete and defined term. Do you agree with the district court conclusion that Tesla makes the difference here? And if we hadn't decided that this case would come out the other way if Tesla had not been decided? Your Honor, no. We believed and we argued in our summary judgment motion, of course, that if you apply the holding in intuitive surgical, which says that you look at the statement as a whole, examined as a whole, and if it pertains to a forward-looking target, that that statement is protected. Now, the quality systems decision holds that a company may not use the safe harbor to protect a statement of historical fact, where in that case there were specific concrete representations about the company's pipeline, that it was the same or better than it had been in prior quarters. Well, historical fact doesn't necessarily mean something in the past in this context. It means a representation as what is now, doesn't it? I should have said current or historical fact, yes. And in quality systems, there were representations of current or historical fact with respect to the pipeline. The pipeline during that quarter being the same or greater than in prior quarters, which were directly contradicted by the statements of the confidential witnesses in that case. And so the court held sensibly that a defendant may not make a false statement of historical fact and insulate itself from liability by then presenting a forward-looking statement or target. Those can be separable. But when an officer says, we are on track now to get to where we're going, we're in this place now, isn't that a current representation of a current fact? Well, that's the Tesla case. And in Tesla, the court specifically addresses that issue. There had been a split between the district courts about that very point. And some courts had said, well, if you're going to come here at two or three or however many quarters after you gave the target and say, now I'm standing here two quarters later and I'm telling you we're on track, that that's a statement about historical results or current results. And other courts said, no, that's inherent in providing a target. All you're doing is saying, as I sit here today, I believe we'll achieve a result in the future. And that's protected by the safe harbor. Tesla resolves that issue, explicitly holds that on-track statements are protected by the safe harbor. And that's what we have here. The plaintiffs- Do we have a circuit split now? No, Your Honor. Why not? Well, we've cited decisions from, I believe it's the third, I don't have the exact circuits, but we've cited cases in our brief to the effect that other circuits have held, I believe the third circuit is one, that on-track statements are protected by the safe harbor. Are there no contrary circuit decisions to Tesla in your knowledge? I don't believe so, Your Honor. I think the argument that there's a specific line is simply not consistent with the facts on the record. The plaintiffs point to an internal document that provides a linear progression. That was not a public document that was never provided to shareholders. The plaintiffs do not specify with any particularity where the line starts in their briefing. They say, well, the line begins when Donagan announced the target. And that was on the call for the third quarter of 2013. Well, the line that their expert uses starts on the fourth quarter of 2013. So there's no consistency there. Where does the line, the quote line that the plaintiffs use end? Well, the company didn't provide an earnings per share number for fiscal year 16 that it would certainly achieve. It provided a range. So there's no specified end point for the line. What about the slope in between? The plaintiffs point to a document that uses a cumulative quarterly growth function in Excel, which is exponential. And yet throughout their brief, they say, well, the measuring stick line was a straight line. All of this goes to show that there is no concrete and specific measuring stick or benchmark that was put out there. And it's fully consistent with Mr. Donagan's statements that he couldn't do that, that that's why he gave a target three years out into the future, because there were too many puts and takes, ups and downs for him to be able to predict what was going to happen one quarter or the next. And in fact, in the second statement, statement 15, he specifically says the next two quarters are going to be flat, and then we're going to have an increase in the following quarter. He specifically says we're not going to have a straight line linear growth. How about statement number 24? If I look at what I consider framework, contract, build rate, share gains, and all that, you get out so that nothing's gone negative from that standpoint in terms of the framework. Not at all. Is that a forward-looking statement? Yes, Your Honor. He's discussing the framework that was announced in the initial call in January, which provides the assumptions for how the company will ultimately achieve the target. And what he's saying- Says nothing has gone, that's past tense, that's not future tense, it says nothing's gone negative. First of all, when he makes that statement, he's discussing the framework for achieving a future target. He's saying as of today, as of the time I'm speaking to you, the framework is still in place. And with respect to the nothing's gone negative, these are all contracts and build rates that will not even come into play until the beginning of fiscal year 16. This is not a cumulative target. In other words, he was not predicting what is our EPS going to be quarter after quarter after quarter. He was providing a target for EPS that began in the first quarter of 16 and ended in the fourth quarter of 16. So none of the quarters in between are being forecast. I would also point out there is absolutely no evidence in the record to even suggest that this statement is false. There's nothing before the court about build rates or contracts or market share or any other aspect of the framework to suggest that any of that statement was not accurate. So your honors, with respect to the target, we believe Tesla is on point. This is a forward-looking statement protected by the safe harbor. Additionally, I would point out that the trial court specifically found that plaintiffs had not established falsity, that these statements were akin to Mr. Musk's statements that they'd been making great progress. They're not objectively verifiable statements. Whether someone is hovering around the line, whether someone's making great progress, whether someone's near a bullseye, these are not susceptible to determination. The trial court made a discreet finding regarding that very thing, that the statements were too vague to be materially false, right? Yes, Your Honor. Your position is that that wasn't challenged on appeal? It was not, Your Honor. We agree with you on that point. That's dispositive, isn't it? Yes, it is, Your Honor. And the trial court could not have been clearer. On the excerpt of record, page 10, she addresses the safe harbor point. And then on page 11, she says, in addition, and is very clear that this is an alternative finding, based on Tesla, these statements are not actionable. They are not false. And there's been no evidence presented in this briefing, certainly, that would be contrary to that. And so, yes, that is an independent basis upon which the case should be affirmed. I would also say loss causation is as well. There is no ground upon which the court can conclude that any of the, what plaintiffs have alleged to be corrective disclosures, corrected the alleged falsity of any of these statements. Again, the alleged falsity is that the company's organic EPS was somehow below a line of, really, the plaintiff's creation. But that was never corrected or even referenced in any of these so-called corrective disclosures. And the first solar decision is not on point here. They do not satisfy the first solar test. First solar involved a situation where there was a manufacturing excursion, a problem with performing as had been expected, and as a result, the share price declined. And the court found, well, the fact that the company's performance had declined in later periods was caused by this manufacturing excursion. There's nothing akin to that here. I think we understand your point. If there are no further questions, are there any further questions from the panel? Thank you. The time has expired. Thank you. If I may, let me start with falsity. The premise for the district court's falsity conclusion was the same premise as its safe harbor conclusion, which was that it believed that because the statements did not meet some heightened particularity requirement from Tesla, there was no backward-looking claim about how much money the company had actually earned in the past, only an opinion about its ability to reach the target in the future, and it actually thought that it was a separate finding but based on the same premise. And that premise is there was no actionable claim about the past, about how much money they were making. And one of the reasons we read it that way is that the district court said the statements were not specific enough to raise a travel issue effect in falsity. So that's, I mean, it can, and I don't think that was addressed in your brief reading. It was. In the context of the safe harbor, but not in the context of the elements of the claim to be. But it's making the exact same point. So you're saying the same argument that you made in the context of safe harbor because that applies in to the primary claim that you sufficiently raised it. Is that your argument? Yes. And in section two of our brief, we also specifically argued that the district court was right in our first summary judgment order to find jury issues on falsity and scienter. So we preserved it all along. And the reason we read the district court's decision as being premised on the view that there is no material or no real statement about the past is because attributing defendant's holding to the court would be very uncharitable because there is nothing less like an opinion than a corporation statement about how much money it earned last term. The safe harbor already tells investors you cannot count, you cannot rely on projections of future innings. They can lie to you about that if they want so long as they have adequate cautionary language. And so you have to make your own calculation about how likely it is that they're going to reach the target. But the only way the market can do that is if it can rely on statements about past and If this court were to say those kinds of statements can be converted into inactionable statements of opinion by using the kind of language defendants used in this case, you would do enormous damage to our securities laws. I would also like to point out that defendants' arguments make a crucial failure to distinguish between Donegan's statement that he did not expect to be able to come up and say in every subsequent quarter that we were on the line, there would be ups and downs. And what he in fact did say when the time came and he was asked specific questions about what was your growth this quarter, he didn't say, I'm not going to tell you, all I'm going to tell you is that we remain confident we're going to meet the target. He said for the quarter that just finished, we were hovering around the line. That is a statement about the past that is more concrete than anything that this court has ever required. Do you agree with opposing counsel that Tesla is consistent with the decisions in other circuits? Our reading of Tesla is. Okay. Thank you. Thank you. Thank you. The case just argued is submitted. That concludes the court's calendar for argument this morning and the court stands adjourned.
judges: SCHROEDER, SUNG, Antoon